FILED

January 23, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:10 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| ZETA WOODRUFF, | ) | **Docket No. 2016-05-0266** |
| **Employee,** | ) | |
| v. | ) | **State File No. 14737-2015** |
| **WAL-MART ASSOCIATES, INC.,** | ) | |
| **Employer.** | ) | **Judge Joshua Davis Baker** |

## EXPEDITED HEARING ORDER FOR
## MEDICAL BENEFITS

This claim came before the Court on January 12, 2017, on the Request for Expedited Hearing filed by Zeta Woodruff pursuant to Tennessee Code Annotated section 50-6-239 (2016). The present focus of this case is whether Ms. Woodruff is entitled to additional medical benefits, specifically surgery, for an alleged work-related knee injury.[1] For the reasons set forth below, the Court finds Ms. Woodruff would likely prevail at a hearing on the merits in proving her entitlement to the procedure and orders Wal-Mart to provide it.

### History of Claim

The causal relationship between Ms. Woodruff's fall in an icy parking lot at work and her current condition and need for surgery forms the central dispute in this claim. Ms. Woodruff fell in Walmart's parking lot while walking to her car at the end of her shift on February 19, 2015. She testified she hurt her right knee and hand in the accident and required assistance from a co-employee to reach her vehicle. Approximately one year prior to this accident, however, Ms. Woodruff underwent surgery to repair a torn meniscus in the same knee. The postoperative diagnosis from that surgery included, "Right knee degenerative type medial meniscal tear of the posterior horn of the medial meniscus."

Following her accident, Dr. Frank Thomas, an authorized physician at Concentra, diagnosed Ms. Woodruff with a meniscal tear and imposed workplace restrictions after

---

[1] The Dispute Certification Notice listed temporary disability benefits as a disputed issue. At the hearing, Ms. Woodruff stated she was not pursuing those benefits at this time.

an MRI report indicated a "somewhat truncated and heterogeneous appearance of the posterior horn of the medial meniscus, raising possibility of a radial tear in this region." It is unclear whether Dr. Thomas knew of Ms. Woodruff's prior knee surgery when making his diagnosis.

After the diagnosis from Concentra, Ms. Woodruff selected Dr. Robert C. Greenberg from a panel of orthopedic physicians. Upon reviewing the MRI report, Dr. Greenberg assessed a torn meniscus in her right knee; however, he stated the following in his medical notes: "There is a described possibility of a radial tear, but this basically looks like the previous area that was resected." He further explained to Ms. Woodruff that the area of irregularity in her medial meniscus, "was most likely to the area that was previously resected and although there is a chance that this is a new tear the appearance on the MRI is similar to what [a] resected meniscus would look like." Dr. Greenberg recommended a conservative course of treatment and declined to recommend surgery. Ultimately, due to his perception that Ms. Woodruff lacked "some element of trust" in him as her physician, Dr. Greenberg released her from his care.

After Dr. Greenberg's release, Ms. Woodruff selected Dr. Charles Kaelin, another orthopedic surgeon, from the original physician panel. Dr. Kaelin wrote the following concerning Ms. Woodruff in a letter dated May 14, 2015:

> Ms. Woodruff suffered a fall in the parking lot at work three months ago. She had a prior arthroscopy in September, [with] which she did well and had complete resolution of symptoms. This letter is in support that likely the tear is present in the area of prior pathology, though this cannot be proven through arthroscopy. Regardless of where the pathology was located in the meniscus or chondral surfaces, this will be a new injury as she was totally asymptomatic prior to the fall in February.

After Dr. Kaelin provided this opinion, Betty Miller, a claims examiner for Wal-Mart, sent him a letter concerning causation. Neither party introduced the letter into evidence. In response to Ms. Miller's letter, Dr. Kaelin wrote a second letter addressing causation on December 2, 2015:

> We would be unable to determine definitively that the fall of February 19, 2015, is more than 50% responsible for the need for surgery. If and when surgery is performed, additional information may definitively show the relative acute nature of findings. This can only be made at the time of surgery. At this point and based on your letter of this date, we cannot say the injury caused more than 50% of her injury [sic].

After receiving this opinion, the employer sent Ms. Woodruff for a follow-up MRI. The report from this MRI showed evidence of fraying and fibrillation of the area

2

around the posterior horn of the medial meniscus that may have occurred since the prior surgery but "no new linear discrete meniscal tear."

After she underwent the MRI, Wal-Mart sent Ms. Woodruff to Dr. Sean Kaminsky, another orthopedic surgeon, for a second opinion on Dr. Kaelin's surgical recommendation. Dr. Kaminsky assessed Ms. Woodruff with osteoarthritis and an "acute medial meniscal tear" in her right knee. He wrote the following recommendation:

> Based on her evaluation and recent MRI study, she would be [a] candidate for repeat knee arthroscopy in light of the ongoing symptoms and lack of improvement with simple conservative measures. However we discussed that she may have continued symptoms despite the procedure secondary to arthritic changes in her knee. She is here for a second opinion and I agree with the treating physician Dr. Kaelin.

Following the evaluation by Dr. Kaminsky, Ms. Woodruff returned to see Dr. Kaelin on January 26, 2016. He wrote the following in his medical notes: "This young lady is in today in follow up for her right knee. She desires to move ahead with surgery. Work Comp wanted her to have a second opinion, which she did. Dr. Kaminsky agreed she had an acute tear and recommended proceeding with surgery."

Shortly after Dr. Kaelin wrote his medical note, Dr. Kaminsky received a causation letter from Wal-Mart that was not introduced into evidence, which prompted him to include the following addendum in Ms. Woodruff's medical records:

> 1/28/2016 04:07 PM Kaminsky, Sean B > We received a letter regarding causation for this patient's right knee symptoms. Patient does have a prior history of arthritis and previous knee surgery which is likely contributing to her symptoms. I cannot conclude with certainty that the incident of October 19, 2015 contributing [sic] more than 50% of the current injury or need for medical care.[2]

After Dr. Kaminsky entered the addendum, Ms. Woodruff returned to see him again. An entry contained in the medical records after that visit stated the following: "02/05/2016 02:09 PM Horstmeyer, Amy (PSP) > Recent MRI demonstrated a likely recurrent radial tear of the medial meniscus. This would have been treated by her previous physician and prior arthroscopic surgery. It is therefore likely the accident of 2/19/15 contributed more than 50% of the current injury." It is unclear from the medical records what role the author of the note played in Ms. Woodruff's treatment.

---

[2] The parties agreed Dr. Kaminsky's reference to date of the accident as October 19, 2015, was in error.

At the hearing, Ms. Woodruff testified that her knee surgery had been scheduled and then was cancelled. She stated she still suffers pain in her knee and that she had no problems with her surgically-repaired knee prior to the workplace fall. After the fall, she testified she developed continued swelling in her knee accompanied by pain.

**Findings of Fact and Conclusions of Law**

Ms. Woodruff has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Wal-Mart argued Ms. Woodruff's proposed treatment is not casually-related to her work. According to the definition of "injury" under the Workers' Compensation Law, an "accidental" injury generally does not include the aggravation of a pre-existing condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

The Appeals Board explained, "[I]n order to establish a compensable aggravation as part of the accidental injury, an employee must prove by a preponderance of the evidence that the employment contributed more than fifty percent in causing the aggravation." *Sanker v. Nacarato Trucks, Inc., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *8 (Tenn. Workers' Comp. App. Bd. July 6, 2016). Under such circumstances, the injured worker qualifies for medical treatment "made reasonably necessary by [the] accident." *Id.* at *9, *citing* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). Importantly, the Appeals Board then wrote in *Sanker*:

> As discussed in previous cases, however, an employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to obtain temporary disability or medical benefits but must come forward with sufficient evidence from which the court can conclude that he or she is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1). *E.g., McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

*Id.* Further, the Appeals Board held that, at an expedited hearing, where an employee came forward with sufficient evidence to support a conclusion that a work event precipitated her back pain, although the evidence was insufficient to establish the compensability of her claim by a preponderance of the evidence, it was sufficient to support an order compelling the employer to provide medical benefits. *Lewis v. Molly Maid, et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *6-9 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016).

Applying these principles, the Court holds Ms. Woodruff came forward with sufficient evidence from which this Court can conclude she is likely to prevail at a hearing on the merits regarding whether she suffered an aggravation of her preexisting condition. Ms. Woodruff credibly testified in the hearing that she had no problems with her surgically-repaired right knee prior to the workplace fall. After the fall, she developed continued swelling in her knee accompanied by pain. Accordingly, the lay testimony provides evidence that the fall detrimentally affected the condition of her right knee. Live testimony by a lay witness may influence the trier of fact in the consideration of expert medical proof. *Caskey v. Powers Pizza, LLC,* 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Tenn. Workers' Comp. App. Bd. Oct. 7, 2015).

Turning to the expert medical proof, the May 14, 2015 letter from Dr. Kaelin documented that Ms. Woodruff gave a history of a fall in the parking lot, as well as prior pathology and surgery to her right knee. Dr. Kaelin noted Ms. Woodruff had "complete resolution of symptoms" following her previous knee surgery, and, "this will be a new injury as she was totally asymptomatic prior to the fall in February." He subsequently wrote, in response to a follow-up letter from Wal-Mart, that he was unable to "determine definitively" that the fall is more than 50% responsible for the need for surgery, and would be unable to make a definitive determination until the surgery is actually performed. In this statement, the Court finds that Dr. Kaelin admitted he did not have enough information to opine on the cause of Ms. Woodruff's knee condition without performing the surgery. However, her previous injury to that same body part made it difficult to determine through MRI tests whether the February 19 accident or her previous condition resulted in her current need for knee surgery.

In sum, while both the lay testimony and expert proof are insufficient at this point to establish the compensability of Ms. Woodruff's claim by a preponderance of the evidence, as in *Lewis* and *McCord,* the Court finds the evidence is sufficient to support an order compelling medical benefits. Were this Court to find otherwise and deny the requested surgery, it would effectively foreclose the only means by which Dr. Kaelin may definitively ascertain causation.

With regard to the proposed surgery, both Drs. Kaelin and Kaminsky agreed regarding its necessity. As the authorized treating physician, Dr. Kaelin's recommendation is presumed to be reasonable and necessary for treatment of the work-related injury. *See* Tenn. Code Ann. § 50-6-204(a)(3)(H). Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" *See id.* at § 50-6-204(a)(l)(A). The Court finds the proposed surgical treatment reasonable and necessary and orders Wal-Mart to provide it promptly.

5

**IT IS, THEREFORE, ORDERED** as follows:

1. Wal-Mart shall provide the knee surgery recommended by Dr. Kaelin.

2. **This matter is set for a scheduling hearing on February 13, 2017, at 10:30 a.m. (CST).** The Court will convene the scheduling hearing telephonically. The parties must dial (615) 741-2113 or (855) 874-0474 to participate. Failure to participate in the scheduling hearing may result in a determination of issues without further input.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED ON THIS THE 23RD DAY OF JANUARY, 2017.**

**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:

1. Medical Records
2. Ms. Woodruff's Affidavit
3. Physician Panels
4. First Report of Injury

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Wal-Mart's Prehearing Brief
5. Wal-Mart's Witness and Exhibit List

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the  23rd   day of January, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Zeta Woodruff | X | | X | 211 Stewarts Landing Circle Smyrna, TN 37167 zeedwoodruff@yahoo.com |
| Jay Johnson, Employer's Counsel | | | X | jay@cmwatsonlaw.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**